**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAKE SASSER and EVELYN SASSER,<br><br>              Plaintiffs,<br>    v.<br><br>ALLSTATE INSURANCE COMPANY, STAN EISEN, RUSS NOTT, AND DOES 1 through 200, inclusive,<br><br>              Defendants.<br>_____/ | No. C 08-3793 SI<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND AND REMANDING ACTION TO ALAMEDA COUNTY SUPERIOR COURT; DENYING MOTION TO DISMISS WITHOUT PREJUDICE** |

Plaintiffs have filed a motion to remand this action to state court, and defendants Stan Eisen and Russ Nott have filed a motion to dismiss. The motions are scheduled for a hearing on October 10, 2008. Pursuant to Civil Local Rule 7-1(b), the Court determines that the motions are appropriate for resolution without oral argument and VACATES the hearing. For reasons set forth below, the Court GRANTS the motion to remand and DENIES WITHOUT PREJUDICE defendants' motion to dismiss.

**BACKGROUND**

Plaintiffs Jake Sasser and Evelyn Sasser ("Sassers"), are the owners of a single family residence in Oakland, California, which is insured by defendant Allstate Insurance ("Allstate"). Complaint ¶ 8. The complaint alleges that the home was often rented to tenants, and was recently put up for sale. *Id*. On May 12, 2007, a fire occurred in the front bedroom of plaintiffs' residence. *Id*. ¶ 10. The complaint alleges that "[a]n investigation took place and the cause of fire was determined to be suspected arson." *Id*. Plaintiffs filed an insurance claim with Allstate for loss of use and damage to the property, which Allstate denied. *Id*. Plaintiffs allege that when Allstate denied their claim, Allstate provided the Sassers with additional clauses to the insurance policy, previously unknown to the Sassers. *Id*. Plaintiffs allege that Stan Eisen ("Eisen"), an Allstate claims adjuster, and Russ Nott ("Nott"), an Allstate sales agent,

1  "refused to perform the terms and conditions of the insurance policy," and are also responsible for the
2  actions of Allstate. *Id.* ¶ 20.

3  Plaintiffs filed a complaint against Allstate, Eisen, Nott and Does 1 through 200 in Alameda
4  County Superior Court on May 9, 2008. The complaint alleges causes of action for breach of contract,
5  bad faith, negligence, intentional infliction of emotional distress, and negligent infliction of emotional
6  distress, and sought compensatory damages, punitive damages, and attorney's fees and costs. The
7  complaint does not specify any damages figure.

8  On August 7, 2008, Allstate removed this case to this Court on the basis of diversity jurisdiction.
9  Plaintiffs move to remand, arguing that the amount in controversy is less than $75,000, and that
10 diversity does not exist between plaintiffs and defendants. Defendants Eisen and Nott move to dismiss
11 the claims against them, contending that plaintiffs cannot state a claim against them and that they were
12 fraudulently joined.

### LEGAL STANDARD

15 A defendant can remove "any civil action brought in a State court of which the district courts
16 of the United States have original jurisdiction . . . to the district court of the United States for the district
17 and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A district court
18 has diversity jurisdiction over any civil action between citizens of different states as long as the amount
19 in controversy exceeds $75,000, excluding interest and costs. 28 U.S.C. § 1332. If at any time before
20 final judgment it appears that a district court lacks subject matter jurisdiction over a case that has been
21 removed to federal court, the case must be remanded. 28 U.S.C. § 1447(c).

22 The party that seeks to remain in federal court has the burden of proof on a motion to remand
23 to state court. *See Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F. Supp. 1196, 1198
24 (N.D. Cal. 1998). The Ninth Circuit has held that "[t]he strong presumption against removal jurisdiction
25 means that the defendant always has the burden of establishing that removal is proper." *Emrich v.*
26 *Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citations omitted). In cases in which a

2

plaintiff's state court complaint does not specify an exact figure for damages, the defendant must establish, by a preponderance of the evidence, that the amount in controversy exceeds the statutory minimum. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). A defendant must therefore prove that it is "more likely than not" that the amount in controversy is over $75,000. *See id*.

In determining whether the defendant has made such a showing, the district court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. *See Singer v. State Farm Mutual Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). Where the complaint does not specify a damages amount, the court can look at facts in the complaint and require the parties to submit evidence relevant to the amount in controversy. *See Conrad*, 994 F. Supp. at 1198. The amount in controversy is determined as of the date of removal. *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993). A speculative argument as to the amount in controversy is insufficient. *See Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992). Included in the amount in controversy are claims for special and general damages, attorneys' fees (if applicable), and punitive damages. *See Conrad*, 994 F. Supp. at 1198-99 (citing *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (S.D. Cal. 1995)).

**DISCUSSION**

**I.      Non-punitive damages**

The parties dispute the damages associated with repairing plaintiffs' house, as well as damages for loss of rental income and any sales proceeds, as well as emotional distress damages. With regard to the cost of repair, plaintiffs have submitted the declaration of Ron Gant, a licensed general contractor who specializes in fire and water damage restoration work. Gant, a contractor for twenty years, inspected plaintiffs' house over a two day period, and estimates that it will cost $42,966.19 to repair plaintiffs' home. Gant Decl. ¶ 3, Ex. 1. Gant's six page estimate is detailed and itemizes costs for the repair of the front bedroom, living room, hall, bathroom, kitchen/laundry area, rear bedroom, exterior, and general area. *Id.*

In contrast, defendants have submitted a two-page unauthenticated "Incident Report" from the Oakland Fire Department, which appears to be a computerized form.[1] Notice of Removal, Ex. B. The report states that there was a "property loss" of $75,000 as well as a "property value" of $75,000. *Id.* There is no explanation of how the person who completed the form arrived at either calculation, nor is there an explanation of how these figures relate to one another. *Id.* Even assuming that the Incident Report is admissible, the Court affords it very little weight. The Court finds that Mr. Gant's detailed estimate is more likely to be an accurate assessment of the cost of repairing plaintiffs' home.

Defendants also argue that the jurisdictional amount is met because plaintiffs seek damages for the loss of use of their home, lost rental income, and diminished sales proceeds. Plaintiffs respond that the rental income "for the same two bedroom house in East Oakland, California for the year of loss prior [to] removal is not significant to bring the damages close to $75,000." Reply at 3. Neither party has submitted any evidence on this issue. With regard to "lost sales proceeds," again, neither party has submitted any evidence on what, if any, damages plaintiffs could recover in this regard. On this record, the Court has no way to fairly assess these damages, and the Court concludes that defendants have not met their burden of showing that these damages bring plaintiffs' damages to the jurisdictional threshold.

With respect to emotional distress damages, plaintiffs allege in their complaint that, as a result of being improperly denied their insurance claim, they suffered "extreme humiliation, serious and severe mental anguish and emotional and physical distress . . ." Complaint ¶ 37. In the absence of evidence suggesting that a damages claim will yield a sufficient amount in controversy, defendants bear the burden of providing these facts. *See Gaus*, 980 F.2d at 566-67. Defendants argue that notwithstanding the vagueness of plaintiffs' allegations, it is possible that if plaintiffs prevail their "emotional distress damages, if awarded will be substantial."

Plaintiffs argue that defendants have failed to address with any specificity the effect of emotional distress damages on the amount in controversy requirement. It would be speculative to calculate the

---

[1] Plaintiffs assert that Allstate had a claims adjuster visit the property subsequent to the fire. Allstate's opposition does not discuss this visit, nor does the record contain any information regarding whether the claims adjuster made an estimate of the cost to repair plaintiffs' home.

4

1  value accruing to plaintiff from any emotional distress damages alleged. "The defendant may not meet
2  [its] burden by simply reciting some 'magical incantation' to the effect that 'the matter in controversy
3  exceeds the sum of [$75,000],' but instead, must set forth in the removal petition the underlying facts
4  supporting its assertion that the amount in controversy exceeds [$75,000]." *Richmond*, 897 F. Supp.
5  at 450 (quoting *Gaus*, 980 F.2d at 567). Because defendants have not presented facts to the Court
6  signifying that emotional distress damages would significantly contribute towards establishing diversity
7  jurisdiction, defendants' argument as to emotional distress damages is unpersuasive.

**II.    Attorneys' fees**

The amount in controversy may include attorneys' fees if recoverable by statute or contract. *See Richmond*, 897 F. Supp. at 450. In the insurance context, the only recoverable attorneys' fees are those incurred by the plaintiff to obtain policy benefits which would not have been incurred but for the defendant insurer's tortious conduct or bad faith. *See Brandt v. Superior Court*, 37 Cal. 3d 813, 819 (1985). It appears to be an open question in the Ninth Circuit whether an estimate of attorneys' fees incurred after the removal date should be included in the amount in controversy. *See Burk v. Medical Savings Ins. Co.,* 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (discussing split of authority among district courts within the Ninth Circuit).

Defendants assert that plaintiffs' counsel is likely to spend at least 100 hours on this case should the case go to trial, at a rate of $200 per hour, for a total of $20,000. This estimate is based on a 4 day trial, which the Court finds is excessive. Further, because this estimate is for post-removal attorneys' fees, it may be irrelevant. However, even if such an estimate of post-removal attorneys' fees were to be counted toward the amount in controversy, the jurisdictional amount would not be reached.

**III.   Punitive Damages**

A court may include potential punitive damages in calculating the amount in controversy. *See Richmond*, 897 F. Supp. at 450. A defendant can introduce other jury verdicts to bolster its claim that

potential punitive damages would raise the amount in controversy to over $75,000, but those jury verdicts must involve facts analogous to its own case. *See Conrad*, 994 F. Supp. at 1201.

Defendants cite two cases to support their contention that substantial punitive damages should be included in the amount in controversy. In *Cassim v. Allstate Ins. Company*, 33 Cal. 4th 780 (2004), a jury awarded plaintiffs $5 million in punitive damages where evidence of defendant's bad faith included an Allstate agent's false declaration about plaintiffs' furniture (which the agent later recanted at trial), defendant's unsubstantiated accusation that plaintiffs had set fire to their own house, and defendant's dishonest delay tactics which resulted in plaintiffs' eviction from the apartment they were renting. *Id*. at 789-90. In *Textron Financial Corp. v. National Union Fire Ins. Co.*, a jury awarded $10 million in punitive damages (reduced to $360,000 on appeal) after defendant National Union Fire Insurance deleted the plaintiff from an insurance policy of a commercial tour bus without informing him, and subsequently denied the claim when the bus was in an accident. *Textron Financial Corp. v. National Union Fire Ins. Co.*, 118 Cal. App. 4th 1061, 1068 (Cal. App. 2004).

Here, the complaint contains largely boilerplate allegations regarding defendants' bad faith in denying their claim, and the Court is unable to make an assessment of the likelihood of plaintiffs obtaining punitive damages. On this record, the Court finds that defendants have not met their burden of showing that it is more likely than not that punitive damages will raise the amount in controversy over $75,000.

///

## CONCLUSION

Because defendants have not shown by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum of $75,000, this Court lacks jurisdiction. This Court GRANTS plaintiffs' Motion for Remand and REMANDS this case to the Alameda County Superior Court. The Court DENIES WITHOUT PREJUDICE defendants' motion to dismiss; defendants may renew that motion in state court. (Docket Nos. 8, 12).

**IT IS SO ORDERED.**

Dated: October 8, 2008

SUSAN ILLSTON
United States District Judge